UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | | |
|---|---|---|
| COX, COX, FILO, CAMEL & WILSON, LLC | : | CIVIL ACTION NO.: 2:11-CV-856 |
| VERSUS | : | JUDGE MINALDI |
| SASOL NORTH AMERICA, INC., ET AL | : | MAGISTRATE JUDGE KAY |

## MEMORANDUM ORDER

Before the court is a Motion to Remand [doc.14] and a Motion for Attorney Fees [doc. 43] filed by plaintiff Cox, Cox, Filo, Camel & Wilson, L.L.C. (CCFCW). Both motions are opposed by the defendant, Sasol North America, Inc, et al. (Sasol). *See* docs. 30, 54. Oral argument regarding the Motion to Remand was held on October 27, 2011. Doc. 46. For the reasons set forth herein both motions are **DENIED.**

### *Background*

The sole issue currently before the court is the domicile of one of the named defendants in this suit: Wendell Richard Rogers.

The instant suit was filed on March 28, 2011, in the 14th Judicial District Court, Parish of Calcasieu, State of Louisiana, by plaintiff CCFCW. Doc. 1, att. 2, p. 1. The petition alleged violations of La. R.S. section 15:1351, et seq.; otherwise known as the Louisiana Racketeering Act. *Id.* Specifically, the petition alleges that while CCFCW was occupied in litigation with Sasol, Sasol engaged in "an illegal and unethical scheme to obtain confidential information and theft of documents and information [from CCFCW]." *Id.* at 3. As part of this "illegal and

unethical scheme," CCFCW alleged that Wendell "Dick" Rogers served as an "undercover operative" and was "trained and instructed . . . to spy and relay information [to Sasol] regarding activities of Tom Filo." *Id.* at 3-4. Dick Rogers is a named defendant in the instant suit and CCFCW contends that he is a resident of Louisiana. *Id.* at 3.

On June 8, 2011, Sasol removed this case to federal court. Doc. 1. In doing so, Sasol alleged complete diversity of citizenship between CCFCW (a Louisiana limited liability company, doing business in the State of Louisiana, with its principal place of business in Calcasieu Parish, Louisiana [*see* doc. 1, att. 2, p.1]) and all named defendants, including Dick Rogers. Doc. 1, p. 2. In the removal notice and accompanying declaration by Dick Rogers, it is stated that Dick Rogers is a domiciliary of the State of Texas. Doc. 1, p. 4; doc.1, att. 9, p. 1. In Dick Rogers' declaration, executed June 8, 2011,[1] he declares "under penalty of perjury" that his "current domicile is 167 Rainbow Drive, Box 6795, Livingston, TX 77399" and that he established his current domicile in September 2001.[2] Doc. 1, att. 9, p. 1-2. Dick Rogers also states he intends to remain domiciled in Texas and has no intention of establishing a domicile in Louisiana. *Id.*

On June 29, 2011, CCFCW filed a motion to remand. Doc. 14. In the supporting memorandum, CCFCW argues that Sasol has erroneously contended that Dick Rogers is a Texas domiciliary. *Id.*, att. 1, p. 1. CCFCW argues that Dick Rogers is a Louisiana domiciliary and requested limited discovery to gain additional facts to support this argument. *Id.*; doc. 16. On July 23, 2011, this court granted CCFCW's request for limited discovery, with the deadline for completion being September 30, 2011. Doc. 34.

---

[1] Dick Rogers has executed an additional sworn affidavit, dated July 21, 2011, which is essentially the same as his "declaration." *See* doc. 43, att. 7, p. 3.

[2] It is uncontested that 167 Rainbow Drive in Livingston, Texas, is not a physical location. It is a mail slot located at 100 Rainbow Drive, which is the main office of Escapee's RV Park, which, aside from being a RV Park, is also the "largest mail forwarding service in the United States." *See* doc. 43, att. 4.

On September 16, 2011, CCFCW filed a "reply memorandum in support of motion to remand and imposition of costs & attorney fees." Doc. 43, att. 1. The deposition of Dick Rogers was attached to this filing. Doc. 43, att. 6. Citing Dick Rogers' deposition, CCFCW argues that Lake Charles, Louisiana, continues to be the domicile of Dick Rogers. Doc. 43, att. 1, p. 2. To support this argument CCFCW offers the following evidence:

1) 167 Rainbow Drive, Box 6795, Livingston, Texas, "is nothing more than a mail slot (shared with at least 94 other people) at a mail forwarding service for people like Rogers who spend the majority of their time traveling in R.V.'s." *Id.*

2) Dick Rogers owns property in Louisiana, while he owns none in Texas; he claims a "homestead exemption" on his home in Lake Charles (which certifies to the tax assessor that his Louisiana home is his primary residence). *Id.*, *see also* doc. 43, att. 3.

3) Dick Rogers is registered to vote and has continued to vote in Calcasieu Parish, Louisiana;[3] he maintains his primary bank accounts in Lake Charles.[4] *Id.*

4) Dick Rogers belongs to clubs in Lake Charles,[5] maintains state and federal licenses in Louisiana listing his Frazier Street address,[6] continues to receive mail at the Frazier Street address, maintains utilities in his name at the Frazier Street address, uses a Louisiana CPA to file his taxes, and regularly sees several physicians in Lake Charles. *Id.*

CCFCW argues that Dick Rogers has "virtually no connection" to 167 Rainbow Drive in Livingston, Texas. *Id.* CCFCW submits that Dick Rogers receives forwarded mail from the

---

[3] As of July 1, 2011, Dick Rogers was still on the registrar of voters in Calcasieu Parish. Doc. 42, att. 2. Dick Rogers voted in Calcasieu Parish on 11/4/2008, 11/17/2007, 11/7/2006, and 12/7/2002. *Id.* The registrar of voters lists Dick Rogers' Frazier Street address. *Id.* Dick Rogers has never voted in Texas. Doc. 43, att. 1, p. 6.
[4] Dick Rogers maintains three bank accounts with First Federal Bank in Lake Charles. Doc. 43, att. 1, p. 8. Dick Rogers' Teacher's Retirement System checks and Social Security checks are automatically deposited at First Federal. *Id.* Dick Rogers also has a bank account with First State Bank in Livingston, Texas, which was set up in 2004. Dick Rogers, on occasion, works for Skymed International, Inc., who deposits all wages of his directly into his Texas account. *Id.* at 9; doc. 53, p. 6.
[5] Dick Rogers is a member of the Masonic Calcasieu Lodge 400, where he has paid dues and has attended meetings since the mid-sixties. Doc. 43, att. 1, p. 9. Additionally, Dick Rogers is a member of the Southwest Louisiana Amateur Repeater Club (a HAM radio club), where he also pays dues and attends meetings. *Id.*
[6] While Dick Rogers obtained a Texas drivers license in 2001 (and continues to have one), he also applied for a concealed weapon license in 2006 and 2007 in Louisiana, listing his Frazier Street address. Doc. 43, att. 1, p. 8. Also, Dick Rogers applied for a renewal of his HAM radio operator's license with the FCC, in 2005, listing his Frazier Street address. *Id.*

Rainbow Drive address, uses that address for his driver's license and to register his vehicles to avoid Louisiana state sales taxes, and uses that address to avoid Louisiana state income taxes. Doc. 43, att. 1, p. 2.  Further, CCFCW contends that "not only would it be physically impossible to live at 167 Rainbow Drive, Livingston Texas, [Dick Rogers] has never even spent more than a few days a year at the nearby trailer park in Livingston." *Id.* at 2-3.

CCFCW concludes that, in light of the above, Sasol has not abided by its obligation to ensure that its representations to this court were accurate and honest when it sought removal, and therefore, attorney fees and costs should be awarded. *Id.* at 15-16 (citing 28 U.S.C. § 1447 (C); *Miranti v. Lee*, 3 F.3d 925 (5th Cir. 1993); *News-Texan, Inc. v. City of Garland, Texas*, 814 F.2d 216 (5th Cir. 1987)).  In fact, CCFCW contends that Dick Rogers never met his attorney, in person, until one day before his deposition and attorneys for Sasol never spoke with Dick Rogers about the factors which would affect his citizenship.  Doc. 43, att. 1, p. 15 (citing doc. 43, att. 6, p. 111).  Furthermore, CCFCW states that after a break during Dick Rogers' deposition, counsel for Sasol attempted to come back and establish that Dick Rogers was a resident of Mission, Texas.[7]  Doc. 43, att. 1, p. 16.  CCRCW argues that Sasol's "attempt to manufacture a new domicile for Rogers after hearing (for the first time) the true facts surrounding his domicile, should be evidence enough of Sasol's complete lack of any basis to remove this matter in the first place." *Id.*

On the other hand, Sasol, while not disputing the facts above, offers different conclusions.  Sasol contends that in 2001, Dick Rogers and his wife left Louisiana and moved their legal residence to the Escapees RV Club headquarters in Livingston, Texas, with the intention of traveling the United States and Canada throughout their retirement.  Doc. 53, p. 2.

---

[7] Dick Rogers indicated during his deposition that he has leased property in Mission, Texas, whereupon he has built a barn like structure to hold some of his personal property.  Doc. 53, p. 5.

In an attempt to fully affect a change in domicile from Louisiana to Texas, Dick Rogers changed his driver's license, registered his vehicle in Texas, opened a Texas bank account, changed the address on his social security card, began filing his federal income taxes in Texas, and began spending time in Texas.[8]  *Id.*  Further, Sasol argues that the fact that Dick Rogers did not sell his Lake Charles property and continues to maintain contacts in Lake Charles is for convenience purposes.  *Id.*  Sasol asserts that Dick Rogers is not required to fully cut off all ties with his former domicile to obtain a new one.  *Id.* at 3.

Similarly, Sasol argues that the fact that Dick Rogers "was improperly allowed to vote in national elections in Louisiana as late as November 2008 does not mean that Rogers was domiciled in Louisiana in March 2011 [the time of removal]."  *Id.*  Sasol relies on the fact that all of Dick Rogers' votes occurred in 2008 or before, and argues that they should have no bearing in this case because "Rogers' voting practices do not support a finding of Louisiana domicile after 2008."  Doc. 53, p. 9.

Sasol concedes that the fact Dick Rogers may have continued to improperly claim a "homestead exemption" on the house he still owns in Lake Charles, this action "is indicative of nothing but an honest misunderstanding of the tax code."  *Id.*  Sasol points out that the Fifth Circuit has found that election of a "homestead exemption" is not definitively determinative of domicile.  *Id.* (citing *Coury v. Prot*, 85 F.3d 244, 252-54 (5th Cir. 1996)).  Therefore, Sasol argues that nothing that CCFCW has produced overcomes Dick Rogers' sworn testimony the he and his wife moved out of Louisiana in September 2001.  *Id.*

Finally, Sasol argues that CCFCW's motion for attorney fees is "frivolous."  Doc. 54, p. 2.  Sasol maintains that complete diversity exists between the parties in this suit, and as such,

---

[8] In his deposition, Dick Rogers indicated that since 2009 he has spent at least 6 months per year in Texas, while only spending about 3 months per year in Louisiana.  Doc. 53, p. 5.

CCFCW's motion for attorney fees is a "non-starter." *Id.* Alternatively, Sasol argues that even if CCFCW were to prevail on its motion to remand, attorney fees would be improper. *Id.* Because Dick Rogers informed counsel for Sasol that he was no longer a domiciliary of Louisiana, and "duly attested to these facts in a sworn declaration," Sasol argues that it clearly held an objectively reasonable basis for removal. *Id.*

## *Law and Analysis*

Federal Courts are courts of limited jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994). They possess only that power authorized by Constitution and statute. *Id.* Congress has bestowed original jurisdiction in federal district courts for all civil matters where the parties are citizens of different states and the amount in controversy exceeds $75,000.00. *See* 28 U.S.C. § 1332. Civil actions that are filed in state court may be removed to federal court, by a defendant, if the conditions set forth in section 1332 are met. *See* 28 U.S.C. § 1441.

The issue currently before the court is whether the parties are completely diverse.

The removing party bears the burden of showing that federal jurisdiction exists and that removal was proper. *See De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1408 (5th Cir. 1995). When diversity of the parties is at issue, it must be shown by a preponderance of the evidence that diversity existed when the action was commenced, and also, at the time of removal. *See Preston v. Tenet Healthsystem Mem'l Med. Ctr., Inc.*, 485 F.3d 804, 813 (5th Cir. 2007); *Coury v. Prot*, 85 F.3d 244, 251 (5th Cir. 1996). Any ambiguities are construed against removal because the removal statute should be strictly construed in favor of remand. *Manguno v. Prudential Prop. and Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002).

While state law may provide guidance, the question of a person's domicile is a matter of federal common law. *Acridge v. Evangelical Lutheran Good Samaritan Soc'y*, 334 F.3d 444, 448 (5th Cir. 2003) (citing *Coury*, 85 F.3d at 248; 15 *Moore's Federal Practice* § 102.34(3)(a) (3d ed. 2001)). A person acquires a "domicile of origin" at birth, and this domicile is presumed to continue absent sufficient evidence of change. *Id.* (citing *Palazzo v. Corio*, 232 F.3d 38, 42 (2d Cir. 2000)). There is a presumption of continuing domicile that applies whenever a person relocates. *Id.* (citing *Coury*, 85 F.3d at 250). In order to defeat the presumption and establish a new domicile the person must demonstrate both (1) residence in a new state, and (2) an intention to remain there indefinitely. *Id.* There is no durational residency requirement in the establishment of domicile; once presence in the new state and intent to remain are met, the new domicile is instantaneously established. *Id.* (citing 15 *Moore's* § 102.34(3)(a)).

In determining whether a person has changed his (or her) domicile, courts have identified many factors to consider. *Acridge*, 334 F.3d at 448 (citing *Coury*, 85 F.3d at 251). These factors include the places where the litigant exercises civil and political rights, pays taxes, owns real and personal property, has driver's and other licenses, maintains bank accounts, belongs to clubs and churches, has places of business or employment, and maintains a home for his family. *Id.* The court should, when undertaking this examination, weigh all factors equally; no single factor is determinative. *Id.* In addition to these factors, courts are to consider "all evidence" that sheds light on a party's intent to establish domicile. *Coury*, 85 F.3d at 251. Finally, "statements of intent, either to remain in a previous domicile or to establish a new one, are entitled to little weight if they conflict with the objective facts." *Id.* (internal quotations omitted).

It is uncontested that, prior to 2001, Dick Rogers' domicile was Louisiana; therefore, it is presumed that Louisiana continues to be his domicile, unless Sasol, the removing party, can

show by a preponderance of the evidence that Dick Rogers has changed his domicile. It is the opinion of this court that Sasol has done just that.

Most importantly, Dick Rogers has submitted sworn declarations that state that he has left Louisiana and become a resident of Texas, where he intends to remain indefinitely. These statements demonstrate to this court that Dick Rogers has established a new domicile and should only be disregarded if the objective facts indicate otherwise. This court finds that objective facts do not compel the court to disregard that statement.

The facts show that Dick Rogers has not resided in Louisiana since 2001. Although he still owns property in Louisiana, he does not live there. In fact, he has a signed rental agreement with his daughter, who currently resides in the Louisiana property and pays all of the taxes there. Further, Dick Rogers has changed his driver's license, social security card, and vehicle registrations to reflect his change to a Texas residence. Also, Dick Rogers has recently established new bank accounts in Texas and relationships with physicians. He has leased property there to keep some of his personal belongings. Significantly, he has established a permanent and primary mailing address in Texas, and pays taxes there.

CCFCW argues that Dick Rogers has not done enough to overcome the presumption of continued domicile in Louisiana. They point to the facts that Dick Rogers has maintained old bank accounts, club affiliations, physician relationships, and property in Louisiana. Also, they argue that Dick Rogers' voting record and his claiming a homestead exemption on his Louisiana property are indicators that Louisiana is still his domicile.

However, CCFCW errs in two key areas: (1) there is no requirement in establishing a new domicile that a person severs all ties with their previous domicile; and (2) for jurisdictional

purposes, the only relevant time for determining a person's domicile is at the time an action was commenced and subsequently removed.

While CCFCW points to factors that weigh on the domicile determination, as noted above, no one factor is determinative. The fact the Dick Rogers maintains certain relationships and contacts in Louisiana does not overcome the fact that he resides in Texas most of the time, asserts that his intention is to remain there permanently, and has taken significant steps to effectuate his change to a Texas domicile. Similarly, Dick Rogers' voting record from 2008 and his election to claim a homestead exemption on his Louisiana property in 1980 are not indicative of a Louisiana domicile in 2011. The simple fact is that, at the time this action was filed, and then removed, Dick Rogers had established a residence in Texas (the fact that it is in a R.V. does not change this) and manifested an intention to remain there indefinitely. That is enough for this court to find that Dick Rogers is domiciled in Texas.

For the above reasons, and because there is absolutely no indication that Dick Rogers has attempted to manipulate his domicile for the purposes of this action, it is the finding of this court that Dick Rogers is a domiciliary of the State of Texas; which makes the parties to this action completely diverse and a remand improper.

### *Conclusion*

For the foregoing reasons, CCFCW's Motion to Remand [doc. 14] and Motion for Attorneys' Fees [doc. 43] are hereby **DENIED**.

THUS DONE this 30th day of January, 2012.

_____
KATHLEEN KAY
UNITED STATES MAGISTRATE JUDGE