RECEIVED
IN LAKE CHARLES, LA

OCT 16 2012

TONY R. MOORE, CLERK
BY_____
         DEPUTY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | | |
|---|---|---|
| COX, COX, FILO, CAMEL & WILSON, LLC | : | DOCKET NO. 2:11-CV-0856 |
| VS. | : | JUDGE MINALDI |
| SASOL NORTH AMERICA INC., et al. | : | MAGISTRATE JUDGE KAY |

## MEMORANDUM RULING

Before the court are Motions to Dismiss under Rule 12(b)(1) and 12(b)(6) or, in the alternative, to Transfer Venue, from the defendants Sasol North America and Peter Markey ("Sasol") [Doc. 18] and the defendants Timothy Ward, Jay Arthur Bly, Wendell Richard "Dick" Rogers, and Mary Lou Sapone ("individual defendants") [Doc. 19]. The motions are opposed by the plaintiff, the law firm Cox, Cox, Filo, Camel & Wilson, LLC ("CCFCW") [Doc. 52]. Sasol filed a Reply to CCFCW's objections to its motion [Doc. 57]. For the reasons stated herein, the defendants' motions will be GRANTED.

### FACTS

In this lawsuit, CCFCW claims that Sasol and the individual defendants engaged in an illegal and unethical scheme to obtain confidential information and documents related to

1

CCFCW's personal injury litigation against Sasol, in violation of the Louisiana Racketeering Act, LA. REV. STAT. ANN. § 15:1351, *et seq.*[1]

The plaintiff CCFCW is a law firm and Louisiana limited liability company authorized to do and doing business in Louisiana, with its principal place of business and domicile in Calcasieu Parish, Louisiana.[2] The defendant Sasol (originally known as "CONDEA Vista Company" before it was purchased by Sasol Ltd.) is a producer of commodity and speciality chemicals incorporated in Delaware and headquartered in Houston, Texas, with a manufacturing facility in Lake Charles, Louisiana.[3] CCFCW has included Sasol and the individual defendants[4] in this litigation on the basis that, beginning in the summer of 1998 and ongoing for several months thereafter, Sasol hired a private security firm, Beckett Brown Interntaional ("BBI"), the employees of which allegedly engaged in four actions: (1) obtaining confidential attorney work-product materials that CCFCW had thrown away into trash containers; (2) conducting surveillance; (3) breaking and entering; and, (4) wire-tapping.[5] The alleged purpose of these

---

[1] Pl.'s Compl., [Doc. 1-2], at ¶ 15. CCFCW originally filed its complaint against Sasol and the individual defendants on March 28, 2011 in the Fourteenth Judicial District Court in Calcasieu Parish, Louisiana. *See generally id.* The defendants timely removed, and CCFCW's subsequent motion to remand due to lack of diversity jurisdiction was denied. *See* Mem. Order Denying Mot. to Remand and Mot. for Att'ys Fees [Doc. 60]; Aff'd by J. Denying Appeal of the Magistrate Judge Decision [Doc. 67].

[2] *Id.* at ¶ 3.

[3] *Id.* at ¶ 4A.

[4] CCFCW describes the individual defendants as follows: (1) Mary Ann Fisher was an executive at Sasol who hired BBI to spy on CCFCW; (2) Peter Markey was the Manager of Supply Chain Operations at Sasol, and signed off on invoices sent from BBI's Timothy Ward on expenses incurred while spying on CCFCW; (3) Timothy Ward was an executive at BBI who hired operatives to spy on CCFCW (3) Jay Arthur Bly was a BBI operative who trespassed onto CCFCW's property to obtain confidential CCFCW documents discarded in its trash (4) Mary Lou Sapone was a BBI operative who trained local operative Wendell "Dick" Rogers to spy on CCFCW; (5) Wendell "Dick" Rogers was a local operative who conducted surveillance activity for BBI in Lake Charles. *Id.* at ¶¶ 4, 10-14.

[5] *Id.* at ¶ 7. CCFCW maintains that they were informed of these illegal activities by John Dodd, a former investor in BBI.

activities was to gather information about a personal injury case that Thomas Filo, a partner at CCFCW, had brought against CONDEA Vista (now Sasol) on behalf of workers at the Sasol Lake Charles plant in 1994 after a chemical spill at the plant.[6] The entire alleged scheme to infiltrate CCFCW and obtain confidential information about the case against Sasol was part of a larger scheme known as the "Lake Charles Project."[7]

Now, the defendants seek a Motion to Dismiss under Rule 12(b)(6) and 12(b)(1), or, in the alternative, a transfer of venue to either the Southern District of Texas or the District of Columbia under 28 U.S.C. 1404(a).[8] They argue that CCFCW's complaint fails to properly plead the elements of a racketeering claim, and that CCFCW lacks standing to bring a racketeering claim against them.[9]

CCFCW, in its response, argues that it has indeed stated the requisite elements for a colorable racketeering claim, and that the defendants' activities included not only conducting surveillance and picking through CCFCW's trash bins, but also burglary of materials inside the law firm.[10] It alleges that the defendants' theft of confidential attorney work product from the firm certainly qualifies as actionable under the Louisiana Racketeering Act.[11]

---

[6] Pl.'s Compl. at ¶ 5.

[7] *Id.* at ¶ 11. The "Lake Charles Project" also included infiltrating local environmental group CLEAN for the purpose of thwarting CLEAN's environmental organizing work and proposed environmental clean-up of Lake Charles, Louisiana after purported chemical spills at the Sasol plant. This was a separate case that was also before the undersigned under a similar procedural posture. *Zilbert v. Sasol North America*, Inc., No. 2:11-CV-00862, 2012 WL 1950144, *2 (W.D. La., May 29, 2012) (Minaldi, J.).

[8] Sasol's Mot. to Dismiss or, in the Alternative, Transfer [Doc. 18], pg. 1. The individual defendants adopted and incorporated by reference all of the allegations in Sasol's Motion to Dismiss or Transfer. [Doc. 19-1], pg. 1.

[9] Mem. in Supp. of Def. Sasol's and Peter Markey's Mot. to Dismiss or Transfer, [Doc. 18-1], pg. 3-11.

[10] Pl.'s Mem. in Opp'n of Def.'s Mot. to Dismiss and/or Transfer, [Doc. 52], pg. 1-2.

[11] *Id.*, pg. 2.

## RULE 12(b)(1) & 12(b)(6) STANDARDS

A motion to dismiss for lack of standing is properly brought under Federal Rule of Civil Procedure 12(b)(1). *See e.g., Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). The burden of proof rests upon the party seeking jurisdiction. *Id.* A Rule 12(b)(1) motion should be granted "only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle plaintiff to relief." *Id.*

The defendants also move pursuant to 12(b)(6), which challenges the sufficiency of a plaintiff's allegations. Fed. R. Civ. P. 12(b)(6). When ruling on a 12(b)(6) motion, the court accepts the plaintiff's factual allegations as true, and construes all reasonable inferences in a light most favorable to the plaintiff or nonmoving party. *Gogreve v. Downtown Develop. Dist.*, 426 F. Supp.2d 383, 388 (E.D. La. 2006). To avoid dismissal under a Rule 12(b)(6) motion, plaintiffs must plead enough facts to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level. . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 1965. Accordingly, a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.*

## LAW & ANALYSIS

CCFCW asserts a claim under the Louisiana Racketeering Act, alleging predicate acts of theft and simple burglary in addition to racketeering conspiracy.[12] The defendants argue that this claim should be dismissed under Fed. R. Civ. P. 12(b)(1) and 12(b)(6) for, respectively, lack of

---

[12] Pl.'s Compl. at ¶15.

4

standing and failure to state a claim upon which relief may be granted.

First, the defendants assert that CCFCW has failed to allege a single tangible injury to their "business or property" proximately caused by any alleged racketeering violation and, thus, lack standing to bring this civil racketeering claim.[13] There is little Louisiana jurisprudence regarding the Louisiana Racketeering Act, and state courts have noted that Louisiana racketeering laws are modeled upon the federal Racketeer Influenced and Corrupt Organization Act ("RICO").[14] *State v. Touchet*, 99-1416 (La. App. 3 Cir. 4/5/00); 759 So.2d 194, 197. Because of the parallel between RICO and Louisiana's Racketeering Act, federal decisions in this area are persuasive. *Id.*

To have standing to establish a RICO conspiracy, a plaintiff must allege an injury from an act that is independently wrongful under RICO. *Beck v. Prupis*, 529 U.S. 494, 505 (2000). Injury caused by acts that are not racketeering activities or otherwise wrongful under RICO will not establish a viable civil RICO claim. *See* 18 U.S.C. § 1961, *et seq*.

The relevant provision of RICO, 18 U.S.C. § 1964(c), provides that "[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter may sue. . . in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee." In order to confer standing, a civil RICO claimant must prove: "(1) violation of substantive RICO statute, and (2) an injury to the plaintiff's business or property. . . ." *Alcorn County v. U.S. Interstate Supplies, Inc.*, 731 F.2d 1160, 1168 (5th Cir. 1984) (abrogated on other grounds) (citations omitted); *see also*

---

[13][Doc. 18-1], pg. 4.

[14]18 U.S.C. § 1961, *et seq*.

*GreenPeace, Inc. V. Dow Chemical Co.*, 808 F.Supp. 2d 262, 268-69 (D. D.C. 2011). Injury to mere expectancy interests or to an "intangible property interest" is not sufficient to confer RICO standing. *Price v. Pinnacle Brands, Inc.*, 138 F.3d 602, 607 (5th Cir. 1998). Rather, "[t]o demonstrate injury for RICO purposes, plaintiffs must show proof of concrete financial loss." *Chaset v. Fleer/Skybox Intern, LP,* 300 F.3d 1083, 1086–87 (9th Cir. 2002); *Regions Bank v. J.R. Oil Co.*, 387 F.3d 721, 728–29 (8th Cir.2004) (same); *see also Patterson v. Mobil Oil Corp.*, 335 F.3d 476, 492 n. 16 (5th Cir.2003) (A plaintiff lacks RICO standing "unless he can show concrete financial loss.").

The complaint in the instant case alleges that the defendants conspired and schemed to engage in surveillance and theft of CCFCW's property, including stealing confidential documents concerning the 1994 Sasol litigation, information on fees generated from the litigation, and personal tax information from CCFCW partners.[15] CCFCW somewhat summarily claims that it has stated facts sufficient to confer standing, because it claimed in its complaint that the defendants not only obtained material from CCFCW's trash bins, but also "committed theft and burglary of materials inside and outside the law firm in violation of LSA-R.S. 14:62."[16] As such, they argue this activity is "clearly recognized in the Louisiana Racketeering Act."[17] Absent from their argument, however, is a foundation for the second prong of the RICO standing requirement: that CCFCW has suffered a concrete financial loss.

The defendants therefore argue that there are no allegations that support the claim that

---

[15]Pl.'s Compl. at ¶¶ 9, 12.

[16][Doc. 52], pg. 1-2.

[17]*Id.*, pg. 2.

CCFCW has experienced a concrete financial loss.[18] They maintain that CCFCW's complaint instead alleges, at best, that the defendants took documents from inside and outside its building, most notably taking discarded attorney work product documents from its trash.[19] Since CCFCW has not alleged, for example, that its position in the 1994 Sasol case was harmed, or that CCFCW lost any money or clients as a result of the defendants' activities, they argue that CCFCW has not pled facts sufficient to confer standing under RICO or the Louisiana Racketeering Act.[20]

The undersigned recently decided a case that was factually and procedurally similar to the case at hand. *See Zilbert v. Sasol North America, Inc.*, No. 2:11-CV-00862, 2012 WL 1950144 (May 29, 2012) (Minaldi, J.). In the *Zilbert* case, the plaintiffs[21] alleged that Sasol had hired BBI to steal confidential documents from their trash and conduct surveillance in order to thwart their environmental campaign against Sasol. *Id.* at *1. Sasol filed a Motion to Dismiss under 12(b)(1) and 12(b)(6), or, in the alternative, to transfer. *Id.* This court found that the plaintiffs' claim (namely, that they had been thwarted from conducting protests or engaging in public education to inform citizens about Sasol's purported environmental violations) were too intangible to qualify as a concrete financial loss, and thus dismissed their case for lack of standing. *Id.* at *3.

The undersigned notes that the inquiry is closer in this case, as here CCFCW alleges the theft of confidential attorney-work product related to litigation where money damages were at stake, and not instead the theft of documents related to protests and public education about

---

[18] [Doc. 18-1], pg. 4.

[19] *Id.*

[20] *Id.*

[21] The plaintiffs filed their claims on behalf of CLEAN, an environmental organization who had launched a campaign against Sasol after its Lake Charles plant purportedly caused pollution in the Lake Charles area.

7

environmental violations. Indeed, a RICO/Louisiana Racketeering Act claim involving the theft of attorney work product appears to be a matter of first impression in the Fifth Circuit. But, while potential violations of the attorney work product privilege are not to be condoned, CCFCW's claims as pled do not confer standing under RICO or the Louisiana Racketeering Act. Such allegations have none of the hallmarks of the conclusive financial loss necessary to qualify as a RICO injury, because quantifying it would require "extensive speculation" rather than "the calculation of present, actual damages." *In re Taxable Mun. Bond Secs. Litig.*, 51 F.3d 518, 523 (5th Cir. 1995). Additionally, on the face of CCFCW's complaint, they do not allege any tangible concrete loss as a result of the defendants' activities, and the undersigned cannot discern from the face of the complaint that an actual concrete loss was suffered.

The complaint fails to allege a cognizable injury sufficient to confer standing. Accordingly, the motion to dismiss will be granted.[22]

## CONCLUSION

For the reasons stated herein, the defendants' Motions to Transfer and Dismiss Complaint will be granted, and all claims asserted by the plaintiff against the defendant will be dismissed with prejudice.

Lake Charles, Louisiana, this 3rd day of October 2012.

PATRICIA MINALDI
UNITED STATES DISTRICT JUDGE

---

[22] Because the court finds there is no standing, there is no jurisdiction and the court will grant the Motion to Dismiss pursuant to Rule 12(b)(1). The court need not discuss the remaining 12(b)(6) argument or motion to transfer argument.